# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **AETNA LIFE INSURANCE CO.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| v. | § | **CIVIL ACTION NO**. **4:12-cv-01206** |
| | § | |
| **HUMBLE SURGICAL HOSPITAL, LLC** | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| **In re: HUMBLE SURGICAL HOSPITAL, LLC, ET AL**[1] | § | |
| | § | |
| | § | Case No. 17-31078-H2-11 |
| | § | (Jointly Administered Under Case |
| | § | No. 17-31078-H2-11 |
| | § | |
| **Debtors.** | § | |

## EMERGENCY MOTION TO WITHDRAW REFERENCE,
## TO LIFT AUTOMATIC STAY AS TO REGIONS BANK
## AND TO TERMINATE DEBTOR'S ABILITY TO USE CASH COLLATERAL

Regions Bank ("Regions") files this Emergency Motion to Withdraw Reference, to Lift

Automatic Stay as to Regions Bank and to Terminate Debtor's Ability to Use Cash Collateral,

and would respectfully show the Court as follows:

---

[1] Humble Surgical Hospital, LLC and three affiliates filed bankruptcy. The Debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Humble Surgical Hospital, LLC (4960), Case No. 17-31078-H2-11; Humble Surgical Holdings, LLC, Case No. 17-31079-H2-11; K&S Consulting Management, LLC, Case No. 17-31081-H-2-11 and K&S Consulting, ASC LP, Case No. 17-31080-H2-11. These Debtors are collectively referred to herein as "Humble" or "Debtors."

1

## I.    **INTRODUCTION**

1.      At a hearing on February 27, 2017, in Case No.  17-31078-H2-11 before United States Bankruptcy Court Judge David R. Jones, Regions agreed to an Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection in order to provide Humble access to cash collateral to continue to operate (the "Cash Collateral Order") (Doc. Nos. 8, 34, and 37; Case No. 17-31078).[2]

2.      During the hearing in the above referenced matter on March 1, 2017, this Court granted Regions' Motion to Intervene in Case No. 4:12-cv-01206 based upon Regions' secured and perfected interest in assets of Humble Surgical Hospital, LLC ("Humble") (Doc. No. 373).

3.      However, based upon the information obtained by Regions at the March 1, 2017, hearing, cause exists for the withdrawal of the reference of the bankruptcy matter Case No. 17-31078-H2-11 to this Court, as well as for the automatic stay to be lifted as to Regions Bank.

4.      Humble's prebankruptcy management remains in control of the Debtor and, therefore, Regions' collateral may be imperiled. Accordingly Regions also requests that the Debtor's ability to use cash collateral under the terms of the Cash Collateral Order be terminated.

## II.    **WITHDRAWAL OF THE REFERENCE**

5.      This Honorable Court is vested with subject matter jurisdiction to grant the relief sought herein pursuant to 28 U.S.C. § 1334(a). This matter presently is before the United States Bankruptcy Court, Judge David R. Jones presiding.  But, in light of this Court's familiarity with Humble and its operating practices, as well as the fact that Plaintiff, Aetna Life Insurance Co. ("Aetna"), is proceeding with collection activities before this Court that impound funds of

---

[2] A copy of the Signed Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection (Doc. No. 54; Case No. 17-31078-H2-11) is attached as **Exhibit "A"**.

Humble which are subject to Regions' security interests,[3] cause exists for this Court to withdraw the reference of the Humble bankruptcy from the Bankruptcy Court.[4]

6.  Furthermore, administration of this matter before this Court is in the interest of efficiency for the parties and judicial economy because this Court already is familiar with the activities and business practices of the Debtor.[5]

## II.  REQUEST TO LIFT THE AUTOMATIC STAY AS TO REGIONS BANK

7.  Following the withdrawal of the reference of the Humble bankruptcy to this Court, Regions requests that, pursuant to Bankruptcy Code § 362(d), this Honorable Court terminate the automatic stay of § 362(a) to permit Regions to exercise its contractual and state law rights with respect to the collateral owned by the Debtor and upon which Regions holds valid, perfected, pre-petition security interests.

8.  To establish a *prima facie* case for cause due to a lack of adequate protection, a movant must demonstrate initially that it holds a claim, secured by a valid, perfected lien upon estate property,[6] and that a decline in the value of its collateral either is occurring or is threatened, against which the creditor is precluded from protecting its interests due to the existence of the automatic stay.[7]

9.  Here, stay relief is warranted under § 362(d)(1) for cause, because the Debtor cannot provide adequate protection of Regions' interest in the property, as evidenced by the

---

[3] A more detailed description of Regions' perfected secured interest, along with evidence of that interest, is included with Regions' Motion to Intervene and the exhibits attached thereto (Doc. No. 367).
[4] *Mirant Corp. v. Potomac Elec. Power Co.*, 197 Fed.Appx. 285, 294 (5th Cir.2006) ("Matters under Chapter 11 are within the district court's original jurisdiction, and reference to and withdrawal from the bankruptcy court of bankruptcy matters is left to the discretion of the district court.").
[5] Judicial efficiency is a factor in whether to withdraw the reference to bankruptcy court. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).
[6] Regions submits that the evidence attached to its Motion to Intervene (Doc. No. 367), which was not objected to by Humble, is sufficient to establish that it holds a perfected secured interest in all assets of the Debtor.
[7] *In re Self*, 239 B.R. 877, 881 (Bankr. E.D. Tex. 1999).

garnishment actions against the Debtor and the costs associated with Regions continuing to protect its interests in its collateral.

10.    Unless the stay is lifted, Regions technically may be in violation of the automatic stay by taking any action to protect its interest, including future participation in the above-captioned case before this Court.[8]

### III.    TERMINATION OF ABILITY TO USE CASH COLLATERAL

11.    There are certain "Termination Events" listed in the Cash Collateral Order the occurrence of which terminates the Debtor's ability to use cash collateral.[9] Though none of those enumerated events have occurred (yet), based upon the recent filings and events in this matter, one or more of the Termination Events soon may happen.

12.    Regions entered into the Cash Collateral Order with the understanding that, with the funds provided by that order, Humble would have access to the funds to allow it to continue to operate. On March 1, 2017, Humble's bankruptcy counsel represented to this Court that Aetna's writ of garnishment had been served upon a bank at which Humble maintained an operating account. Humble's bankruptcy counsel went on to state that, without access to those funds, the Debtor would have to cease operations.

13.    Section 25 of the Cash Collateral Order, entitled "Reservation of Rights," permits Regions Bank to "the right to seek additional adequate protection."[10] If Humble cannot operate without access to garnished funds, then the additional funds authorized for use under the

---

[8] Arguably, Regions is permitted to take actions in this Court under the terms of the Cash Collateral Order, which permits Regions to take action pursuant to the order without fear of violation of the automatic stay or further order of the bankruptcy court. *See* Cash Collateral Order, **Exhibit "A"**, pg. 16, ¶21. Nonetheless, Regions seeks a lifting of the automatic stay to put to rest any question regarding its ability to act to protect its collateral.

[9] *See* Cash Collateral Order, **Exhibit "A"**, pgs. 12-13, ¶¶15-16.

[10] *See* Cash Collateral Order, **Exhibit "A"**, pg. 15, ¶25.

Cash Collateral Order are unlikely to permit the Debtor to continue to operate—and the budget agreed upon by the parties is immediately suspect.

14.　　Regions requests that the Debtor's ability to use cash collateral pursuant to the Cash Collateral Order be terminated immediately because (at the risk of being colloquial) Regions is now being asked to "throw good money after bad."

WHEREFORE, for all the foregoing reasons, Regions Bank respectfully requests the Court (i) enter an order withdrawing the reference of bankruptcy Case No. 17-31078-H2-11 (and the related bankruptcies) to this Court, (2) an order lifting the automatic stay as to Regions Bank, (3) enter an order terminating immediately Humble Surgical Hospital, LLC's ability to use cash collateral under the Cash Collateral Order (Doc. No. 54), and (4) grant Regions such other relief to which it may be entitled.

<div style="margin-left: 40%;">

Respectfully Submitted,

**MCGLINCHEY STAFFORD, PLLC**

By:　__/s/ Matt D. Manning__
　　　**MATT D. MANNING**
　　　State Bar No. 24070210
　　　**KYLE A. FERACHI**
　　　State Bar No. 24072624
　　　1001 McKinney, Suite 1500
　　　Houston, TX 77002
　　　Telephone:　(713) 520-1900
　　　Facsimile:　(713) 520-1025

**ATTORNEYS FOR INTERVENOR
REGIONS BANK**

</div>

## CERTIFICATE OF SERVICE

Pursuant to Texas Rules of Civil Procedure 21 and 21a, I certify that on the 2nd day of March, 2017 a true and correct copy of the foregoing has been served on the counsel of record as follows:

*Via ECF Filing*
John Bruce Shely
Andrews Kurth Kenyon LLP
600 Travis, Suite 4200
Houston, TX 77002
713-220-4105
Fax: 713-220-4285
Email: jshely@andrewskurth.com
*Attorney for Aetna Life Insurance Co.*

*Via ECF Filing*
**Robert H Bateman**
Bateman Pugh Chambers, PLLC
1811 Bering Dr.
Ste 420
Houston, TX 77057
713-609-7732
Fax: 713-609-7777
Email: rhb@bpattorneys.com
*Attorney for Humble Surgical, LLC*

*Via Email:* **rothberg@hooverslovacek.com**
Edward L Rothberg
Hoover Slovacek, LLP
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, TX 77056
713-977-8686
Fax : 713-977-5395
Email: rothberg@hooverslovacek.com

*/s/ Matt D. Manning*
Matt D. Manning

# EXHIBIT "A"

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
03/02/2017

| | | |
|---|---|---|
| IN RE: | § | **Chapter 11** |
| | § | |
| **HUMBLE SURGICAL HOSPITAL, LLC, et. al.,**[1] | § | **CASE NO. 17-31078-H2-11** |
| | § | |
| | § | **Joint Administration Pending** |
| **Debtors** | § | |

<u>**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL
AND PROVIDING ADEQUATE PROTECTION**
[Related to Doc. #8]</u>

This Interim Order Regarding Use of Cash Collateral and Adequate Protection ("<u>Interim Order</u>") is entered upon the Emergency Motion Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Entry of Interim and Final Orders: (1) Authorizing the Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling Final Hearing, and (4) Providing Related Relief (the "<u>Motion</u>") and upon terms agreed to by Debtor Humble Surgical Holdings, L.L.C. ("<u>Humble Surgical Holdings LLC</u>" or the "<u>Debtor</u>") and Regions Bank, National Association ("<u>Regions</u>").

Upon the terms of the Motion, the stipulation, acknowledgements and agreements of the Debtors and Regions, the statements of the parties and their respective counsel at the interim hearing on the use of Cash Collateral, and the record of these proceedings, the Court makes the following findings of fact and rulings of law:

**The Debtor's Chapter 11 Case; Jurisdiction; Notice**

A.     On February 24, 2017 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of Title 11 of the United States Code (the "<u>Chapter 11</u>

---

[1] The Debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Humble Surgical Hospital, LLC (4960), Case No. 17-31078-H2-11; Humble Surgical Holdings, LLC, Case No. 17-31079-H2-11; K&S Consulting Management, LLC, Case No. 17-31081-H-2-11 and K&S Consulting, ASC LP, Case No. 17-31080-H2-11.

Case"). Since the Petition Date, the Debtor has operated its business and managed its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.[2] No request has been made for the appointment of trustee or examiner in the Chapter 11 Case.

      B.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1049.

      C.    The Debtor has served proper notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362 and 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 4001,[3] and the local rules for this Court, which notice was sent to, among others: counsel of record for Regions, the Debtor's 20 largest unsecured creditors as set forth in the list filed by the Debtor in the Chapter 11 Case pursuant to Bankruptcy Rule 1007(d); all known holders of liens on, or equipment leasing interests in, the Debtor's assets; the Office of the United States Trustee (the "U.S. Trustee"); and all applicable government agencies to the extent required by the Bankruptcy Rules or local rules of this Court. This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

      D.    Debtor, Humble Surgical Hospital, LLC owns medical equipment and accounts receivable.

      E.    Prior to the Petition Date, Debtor Humble Surgical Hospital, LLC obtained several secured loans from Regions pursuant to certain agreements, instruments and security documents (collectively, the "Loan Documents"). Regions holds valid liens and security interests in the accounts receivable and equipment. Regions filed suit against Debtors and

---

[2] As used herein, 11 U.S.C. § 101 *et seq.* is referred to as the "Bankruptcy Code."
[3] As used herein, the Federal Rules of Bankruptcy Procedure are referred to as the "Bankruptcy Rules."

guarantor,[4] alleging a breach of the Loan Documents. *See*, "*Regions Bank v. Humble Surgical Hospital LLC, et al.*," No. 2015-49205 *In the 215th Judicial District Court of Harris County, Texas* (the "Suit"). Ultimately, the District Court granted entered an agreed final judgment in favor of Regions and against Debtors and the guarantor. Attached hereto as Exhibit 1 is a copy of the Agreed Final Judgment (the "Judgment"). The Judgment fixes the amount of the amount of the Regions claim (the "Claim").

> F.      Attached hereto as Exhibit "2" is a copy of a Budget prepared by Debtor Humble Surgical Holdings, LLC which outlines the projected use of funds from operations for the next 14 days (the "Budget").

**The Motion**

> G.      In the Motion, Debtor Humble Surgical Hospital, LLC requested that it be authorized, pursuant to Sections 105(b), 362, 363, 506, 507 and 1108 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, to use cash collateral of Regions on an interim and final basis in accordance with the terms and conditions of this Interim Order.

> H.      Rule 4001(b)(2) provides that a hearing on use of cash collateral may not be conducted earlier than fourteen days after service of the motion requesting such use, but that a court may grant a preliminary hearing earlier than such date to authorize the use of such cash collateral necessary to prevent immediate and irreparable injury. Debtor Humble Surgical Holdings, LLC requested that an immediate, emergency preliminary hearing be scheduled pursuant to 11 U.S.C. § 363(c)(3) for this Court to grant authority to use cash collateral in accordance with the budget time periods covering the gap between the filing of the Motion and March 10, 2017.

---

[4] Regions holds guarantees by the affiliate debtor entity, FM 1960 Properties LLC. The affiliate Debtor-entity guaranty is not secured by accounts receivable security interests in, to and upon such affiliated Debtor-entity accounts receivable.

I.     Debtor Humble Surgical Hospital, LLC will suffer immediate and irreparable injury if such emergency, limited authorization is not approved as it must pay payroll, vendors, suppliers, utilities and other costs of operation.  If it is unable to pay its ongoing post-petition obligations until final hearing, it is quite likely that the business will be unable to reorganize successfully as employees may quit, vendors and suppliers may terminate services and goods and utilities may terminate service.  For these reasons, interim relief granted herein is appropriate.

J.     Debtor Humble Surgical Holdings LLC further requested that this Court schedule a final hearing on this Motion for such time as this Court has available after the expiration of fourteen days from the service of the Motion.

K.     At such final hearing, Debtor Humble Surgical Holdings LLC will request that this Court authorize it to use cash collateral in accordance with a new 13 week Budget subject to the ability to request further extensions of such authorization via future orders of this Court.

**Adequate Protection**

L.     11 U.S.C. § 363(c)(3) and (e) provide that use of cash collateral may be granted if the secured party is adequately protected.  Adequate protection determinations are made on a case by case basis to determine whether a creditor's secured position is diminished by the proposed use of the collateral.

**The Regions Secured Claim**

M.     Pursuant to the Regions Judgment, Regions is owed the aggregate sum of $3,557,552.22 as of March 31, 2016, with interest accruing at the rate of $ 314.63 per diem, and attorney's fees as may be allowed by court order.  In addition to accounts receivable and proceeds therefrom, Regions has and liens against all equipment, fixtures and general intangibles owned by Debtor Humble Surgical Hospital, LLC (collectively, the "Collateral").

N.      Debtor Humble Surgical Hospital, LLC and Regions agree that that use of cash collateral could result in Diminution (as defined below) and that Regions is entitled to the protections afforded in this Interim Order.

O.      Under these circumstances, the Court concludes that the use of cash collateral by Debtor Humble Surgical Hospital, LLC in accordance with this Interim Order will be authorized.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1.      <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  The requirements of Bankruptcy Rule 4001(b)(2) are satisfied with respect to the use of cash collateral on an interim and preliminary basis pending a final hearing on the Motion.  Any objections to the relief sought in the Motion other than that of Regions (whose objections are preserved, reserved and maintained) that not have been resolved previously or that have not been withdrawn, and all reservations of rights contained therein, are overruled on the merits, without prejudice, however, to any such objection or reservation or rights being reasserted (subject to paragraph 28 below) in connection with the hearing on entry of the Final Order.

2.      <u>Authorization to Use Cash Collateral</u>.  The Debtor Humble Surgical Hospital, LLC is authorized to use as cash collateral (as defined in Section 363 of the Bankruptcy Code) any revenues derived by the Debtor in the ordinary course of its business and funds that are identifiable proceeds thereof or which are held in its various bank accounts upon which Regions holds a lien or security interest or right of setoff (the "<u>Cash Collateral</u>") until the earlier of the occurrence of a Termination Event (as defined below) or March 10, 2017, but only on the terms of this Interim Order.  Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as Exhibit "2"

(the "Budget"), and not exceeding the aggregate amount of the total cash outflows shown on the Budget attached hereto as Exhibit 2 through March 10, 2017, with an aggregate variance of $9,000. Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Budget.

3.     Prohibited Use of Cash Collateral.   Except as expressly provided in this paragraph, no Cash Collateral or proceeds thereof shall be used for the purpose of: (a) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of (i) the Judgement (ii) the Loan Documents and all the instruments, documents and agreements set forth related thereto, (iii) any liens or security interests or (iv) any other rights or interests of Regions set forth in Judgment or the Loan Documents; (b) asserting any claims or defenses or causes of action against Regions or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including, without limitation, to the payments made pursuant to the Loan Documents; (c) seeking to modify any of the rights granted to Regions hereunder for the period during which this Interim Order is in effect; (d) seeking to bifurcate any claims of Regions; (e) paying any amounts not included in the Budget (except as authorized herein); and (f) paying any amounts on account of claims arising before the Petition Date, except pursuant to an order of this Court upon notice to Regions and hearing thereon.

4.     Amendment or Extension of this Order.  This Interim Order shall not be amended without the express written consent of Regions, which shall be at its sole discretion. Notice of any such amendment to this Interim Order shall be filed with the Court and served on all parties entitled to notice in accordance with Bankruptcy Rule 4001(b). Any party may object to such

amendment and request a hearing before the Court. If no such objection is made within five (5) days of such notice, such amendment shall become final.

       5.      <u>Amendment or Extension of Authorization to Use Cash Collateral</u>. The Debtor Humble Surgical Holdings, LLC at any time may propose to Regions in writing (including by email) an amended budget, either for the period covered by the Budget or for any period thereafter. Regions may withhold its consent to such amended budget for any reason or purpose. The amended budget shall become the Budget for purposes of this Order upon Regions' written consent (which may be supplied to the Debtor by email). At such time as the amended budget becomes the Budget, the Debtor Humble Surgical Holdings LLC shall file a copy thereof with this Court and serve it upon all parties entitled to notice in accordance with Bankruptcy Rule 4001(b). In the event of an objection by Regions, the Debtor may at any time seek relief from this Court, including, but not limited to, an order seeking further authorization to use Cash Collateral in accordance with such amended budget and Regions reserves all rights to object to same. Any party in interest may object to such amended budget and request a hearing before the Court. If no such objection is made within five (5) days of such notice, such amendment shall become final.

       6.      <u>Rollover and Supplemental Liens as Adequate Protection for Any Diminution</u>. As adequate protection for any diminution in the value of Cash Collateral and other Pre-Petition Collateral resulting from the Debtor's use thereof after the Petition Date ("<u>Diminution</u>"), Regions shall continue to have a valid, perfected and enforceable continuing replacement lien and security interest (the "<u>Rollover Lien</u>") in all assets of the Debtor existing on or after the Petition Date of the same type as the Cash Collateral and other Pre-Petition Collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after

the Petition Date, to the same extent, validity, perfection, enforceability and priority of the liens and security interests of Regions as of the Petition Date (the "Post-Petition Collateral"). The Rollover Lien shall be subject only to prior valid and perfected liens, if any, existing as of the Petition Date with priority over Regions' liens and security interests, and to the Carve-Out (as defined herein). The Rollover Lien shall be limited to the amount of any Diminution. As additional adequate protection for any Diminution, Regions shall have a valid, perfected and enforceable continuing supplemental lien and security interest (the "Supplemental Lien") in all of the assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products and profits thereof, including, without limitation, causes of action under Chapter 5 of the Bankruptcy Code and proceeds thereof. The Supplemental Lien shall be subject only to prior valid and perfected liens, if any, existing as of the Petition Date. The Supplemental Lien shall be limited to the amount of any Diminution in excess of the value of the Rollover Lien.

7.     Status of Adequate Protection Liens. The Rollover Lien and the Supplemental Lien (collectively, the "Adequate Protection Liens") set forth in this Interim Order shall be in addition to all other rights of Regions, including Regions' liens and security interests in the Pre-Petition Collateral. The Adequate Protection Liens shall not be subject or subordinated to (a) any liens arising after the Petition Date, including, without limitation, any liens or security interests in favor of any federal, state, municipal or other government unit, commission, board or court for any tax liability of the Debtor, whether secured or unsecured, including property taxes for which liability is *in rem, in personam*, or both, except a tax of a kind specified in Section 507(a)(8) of the Bankruptcy Code, or (b) any intercompany or affiliate liens of the Debtor, or

subordinated to or made *pari passu* with any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

9.     <u>No Further Action Required for Perfection</u>.  The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability and perfection of the Adequate Protection Liens granted to Regions, whether or not Regions elects to file or record financing statements, any other documents which may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; *provided, however*, that, upon the request of Regions, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens, and Regions, in its sole discretion, may file, but shall not be required to file, a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Regions' reasonable request, and such filing or recording shall be accepted and shall constitute further evidence of perfection of Regions' liens and security interests.  No obligation, payment, transfer or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

10.    <u>Superpriority Claim</u>.  As additional adequate protection for any Diminution, Regions shall have a super-priority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code, with recourse to and payable from any and all assets of the Debtor's estate, including, but not limited to, rights of the Debtor, choses in action or claims of any kind

whatsoever, choate or inchoate, present or residual, which for any reason cannot not be made the subject of the Adequate Protection Liens for purposes of this Interim Order (the "Secured Party Superpriority Claims"). The Secured Party Superpriority Claims shall be subject to only prior valid and perfected liens existing on the Petition Date and the Carve-Out and shall have priority over any and all administrative expenses, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee or any creditor, in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment which allowed claims shall be payable from and have recourse to all pre and post-petition property of the Debtor and all proceeds thereof. The Secured Party Superpriority Claims shall be limited to the amount of any Diminution in excess of the aggregate value of any recovery from the Rollover Lien and (without duplication) the Supplemental Lien. For the avoidance of doubt, Regions must first seek to collect the Diminution from assets are subject to the Rollover Lien. If the assets subject to the Rollover Lien are insufficient to satisfy any Diminution, Regions may then seek to collect the Diminution from the assets that are subject to the Supplemental Lien. If the Rollover Lien and the Supplemental Lien are insufficient to satisfy any Diminution, then Regions shall have superpriority claim for any remaining deficiency.

11.     Allowance of Claim and Section 506(c) Waiver.  Subject to entry of a final order and except as set forth in paragraph 26 below, the entry of this Interim Order by the Court shall be a conclusive and binding determination on all parties: (a) of the amount of the Regions Claim; (b) of Regions' rights to payment of that Claim; (c) of the scope and extent of Regions' liens and security interests in the Pre-Petition Collateral; and (d) of Regions' security interests in the Pre-Petition Collateral, including, without limitation, the Cash Collateral, have been duly perfected and are in all respects valid and enforceable security interests and liens and not subject to any claim under Bankruptcy Code Section 552(b).  The entry of an order by the Court approving the Motion on a final basis (the "Final Order") shall be a conclusive and binding determination on all parties that Regions' security interest in the Pre-Petition Collateral, including, without limitation, the Cash Collateral are not subject to any claim under Bankruptcy Code Section 506(c).

12.     Financial Information Access and Reports. As additional adequate protection of Regions' security interests in the Cash Collateral and other Pre-Petition Collateral, the Debtor shall allow Regions and its professionals and designees reasonable access during normal business hours to the premises of the Debtor in order to conduct appraisals, analyses and/or audits of the Pre-Petition Collateral and the Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by Regions for this purpose.  From and after the entry of this Interim Order, the Debtor shall provide to Regions weekly on Wednesday of each week (commencing with the second Wednesday after the Petition Date), a report certified by the Debtor's chief financial officer and in the same form as the Budget indicating all receipts received by and disbursements made by the Debtor in the week ending the prior Friday compared to the Budget and detailing any variances from the expenditures and receipts as described in the Budget.  The Debtor and its representatives shall be available every Tuesday

(subject to reasonable scheduling conflicts) for a telephonic conference call with Regions to discuss the status of the sale process, the results of operations and other matters pertaining to the Chapter 11 Case. The Debtor shall provide to Regions such other reports and information as Regions may reasonably request from time to time.

13. <u>Compliance With Loan Documents</u>. As further adequate protection against Diminution, the Debtor shall comply with those terms and provisions of the Loan Documents requiring insurance coverage on and maintenance of the Collateral. The requirements of this Interim Order shall be in addition to, and not in substitution for, the terms and provisions of the Loan Documents; *provided, however*, that, in the event of any inconsistency between the provisions of the Loan Documents and this Interim Order, the terms of this Interim Order shall control.

14. <u>Maintenance of Collateral</u>. The Debtor shall maintain the Pre-Petition Collateral in good repair and condition and not permit or commit any waste thereof.

15. <u>Termination of Authority to Use Cash Collateral With Prior Notice</u>. The Debtor's authority to use Cash Collateral shall terminate without any further action by this Court and a Termination Event shall occur four (4) business days after written notice sent by Regions to the Debtor and filed with the Court, any committee appointed in this case and the U.S. Trustee of the occurrence of any of the following (a "<u>Termination Event</u>"):

(a)      except for Emergency Expenses (as defined in this paragraph), the payment or incurrence by the Debtor of expenses, or any other amounts, of a type not set forth in the Budget. The term "Emergency Expenses" includes any expenses beyond or above that identified in a particular line item within the Budget, or not included in the Budget, which (i) arise as a result of operations of the Debtor's business, and (ii) are required to be paid to avoid immediate and irreparable harm to the Collateral or the Debtor's business operations; provided, however, the Debtor shall first obtain the consent of Regions prior to paying such expense;

(b)      the failure of the Debtor to pay, within ten (10) days of the date required to be paid by order of the Court or applicable provisions of the Bankruptcy Code, all undisputed administrative expenses in full in accordance with their terms as provided for in the Budget;

(c)      the failure of the Debtor to pay timely all fees due under 28 U.S.C. §1930; and

(d)      the failure of the Debtor to comply with, keep, observe or perform any of its agreements or undertakings under this Interim Order,

Unless, prior to the expiration of the four (4) business day period described in this paragraph, the Debtor has cured the Termination Event(s) specified in Regions' notice or any party in interest(s) has obtained an order of this Court (after notice to and with opportunity to be heard by Regions) that no such Termination Event has occurred, the Debtor's authority to use Cash Collateral hereunder shall terminate.

16.      <u>Termination of Authority to Use Cash Collateral Without Prior Notice</u>.  The Debtor's authority to use Cash Collateral hereunder, shall terminate without any further action by this Court and a Termination Event shall occur without prior notice upon the occurrence of any of the following (also a "<u>Termination Event</u>"):

(a)      the Debtor's Chapter 11 case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(b)    the earlier of (i) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (ii) the date the Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(c)    the Bankruptcy Court suspends the Debtor's Chapter 11 Case under Section 305 of the Bankruptcy Code;

(d)    entry of an order confirming a plan in the Chapter 11 Case;

(e)    the consummation of the sale of all or substantially all of the assets of the Debtor and the Debtors' estate;

(f)    this Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of Regions;

(g)    an order is entered in the Chapter 11 Case over the objection of Regions approving financing pursuant to Section 364 that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to Regions under this Interim Order;

(h)    an adversary proceeding or contested matter is commenced by the Debtor challenging the terms of the Judgement, or the validity, enforceability, priority or extent of Regions' liens, or security interests; or

(i)    the Court fails to enter a Final Order allowing this Motion, on terms acceptable to Regions, on or before March 15, 2017.

Upon the occurrence of a Termination Event described in this paragraph, the Debtor's authority to use Cash Collateral hereunder shall terminate.

17.    <u>Post-Termination Rights</u>. Notwithstanding cessation of the Debtor's right to use Cash Collateral hereunder as of a particular date (a "<u>Termination Date</u>"):

(a)    the Debtor or a trustee appointed for the Debtor's estate may use Cash Collateral to pay payroll and payroll-related expenses such as taxes accrued through and including the Termination Date, up to the amounts set forth in the Budget; and

(b)    the Debtor may seek and Regions may oppose use of Cash Collateral on any terms that the Debtor wishes to propose, on short notice such that relief can be entered not later than the Termination Date, *provided, however*, that the Debtor and Regions may stipulate, without the need for a further order of this Court, for this Order to remain in effect temporarily through the date of a hearing on such relief.

18.    <u>Releases</u>.  Subject to entry of a final order and Paragraph 26, the Debtor hereby waives, releases and discharges Regions and its respective past, present and future affiliates, agents, attorneys, professionals, officers, directors and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Judgment and the Loan Documents, any aspect of the prepetition relationship between Regions and the Debtor and any other acts or omissions by Regions in connection with the Judgement, Loan Documents or Regions' prepetition relationship with the Debtor.  Further, the Debtor stipulates to the terms of the Judgement and waives any and all rights to object to or contest the amount of Regions' Claim (except to the extent that such Claim is inconsistent with the Judgment) or Regions' liens and security interests in the Pre-Petition Collateral, and agrees that all such claims and security interests have been duly perfected and are in all respects valid and enforceable security interests and liens.

19.    <u>Failure of Adequate Protection</u>.  Nothing herein shall constitute a waiver, release or modification of the rights of Regions to assert a claim or claims under Bankruptcy Code Sections 364(c) and/or 507(b).

20.    <u>Deemed Request for Stay Relief</u>.  This Interim Order shall be deemed to constitute a request by Regions for relief from the automatic stay with respect to the Pre-Petition

Collateral and for adequate protection for the use of cash collateral as of the Petition Date.

      21.    <u>Modification of Automatic Stay</u>. The automatic stay imposed by virtue of Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit Regions to: (a) receive payments to be made by the Debtor to Regions, if any, and (b) take any action specifically authorized or contemplated by this Interim Order. Any of the aforementioned actions may be taken without further order of this Court.

      22.    <u>Preservation of Rights</u>. If any or all of the provisions of this Interim Order, at any time, are modified, vacated or stayed, such stay, modification or vacation shall not affect the validity, extent, priority and enforceability of any lien, priority or other benefit conferred under this Interim Order prior to such stay, modification or vacation.

      23.    <u>Binding Effect</u>. This Interim Order shall be binding on all creditors and parties in interest in this case, including, but not limited to, the Debtor and any successors thereto, any Chapter 11 or Chapter 7 trustee that is appointed or elected in this case, and any committee; *provided, however*, that this Interim Order is without prejudice to the rights of any party in interest, on behalf of the Debtor's estate or otherwise, to challenge the validity, amount, perfection, priority, extent or enforceability of the Regions Claim or the pre-petition liens and security interests of Regions, so long as any such challenge is made on or before 60 days after the commencement of this Chapter 11 Case, after which time all such challenges shall be deemed finally and conclusively barred; *provided, further,* that, if one or more claims are made timely and properly filed under this paragraph, then, except for such claims, all potential claims and causes of actions are hereby deemed forever waived and relinquished.

      24.    <u>No Competing Liens</u>. Except as set forth herein and during the time that this Interim Order remains in effect and has not been superseded by a Final Order, the Debtor shall

not grant liens on, or security interests in, the Pre-Petition Collateral or the Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise.

25.     <u>Reservation of Rights</u>.  Except as provided in this Interim Order, neither the Debtor nor Regions waives any of their rights under the Bankruptcy Code, any applicable law, the Judgement or the Loan Documents, including, without limitation, the right of the Debtor or Regions at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtor or Regions to exercise any of their rights and remedies under the Bankruptcy Code at any time.  In particular, Regions and the Debtor each reserves its rights to seek modification of this Interim Order and Regions reserves the right to seek additional adequate protection including, without limitation, with regard to the use of its Collateral other than Cash Collateral.

26.     <u>Further Relief</u>.  Nothing herein shall (a) preclude Regions or the Debtor from seeking any other relief that it may deem appropriate, including relief from the automatic stay, or (b) prevent Regions from asserting at some later time that its liens and security interests in the Pre-Petition Collateral are not being adequately protected, or the Debtor from opposing such assertion.

27.     <u>No Control</u>. Regions is not, and shall not be deemed to be, in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Interim Order and to extending financial accommodations of any type, kind or nature under this Interim Order.

28.    No Third Party Beneficiaries.  No rights are created hereunder for the benefit of any third party, including, without limitation, any creditor or any direct, indirect or incidental beneficiary.

29.    Effectiveness.  The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date.  This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto.  If any or all of the provisions of this Interim Order hereafter are reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (a) the validity, extent, priority or enforceability of any obligations incurred prior to the actual receipt of written notice by Regions of the effective date of such reversal, modification, vacatur or stay or (b) the validity, extent or enforceability of the liens and claims granted hereunder.

30.    Notices.  All notices, requests, demands, waivers and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) sent by next-day or overnight mail or delivery or (c) sent by e-mail to the following addresses:

TO THE DEBTOR:

Edward L. Rothberg
Melissa Haselden
Hoover Slovacek, LLP
5051 Westheimer, Suite 1200
Houston, TX  77056
rothberg@hooverslovacek.com
haselden@hooverslovacek.com

TO REGIONS:

Richard A. Aguilar
Rudy J. Cerone
McGlinchey Stafford, PLLC
601 Poydras Street, 12th Floor

New Orleans, LA 70130
raguilar@mcglinchey.com
rcerone@mcglinchey.com

31.     Notice of Final Hearing.  Within two (2) business days after entry of this Interim

Order, mail copies of a notice of the entry of this Interim Order, the Debtor shall together with a

copy of the Motion and a notice of the Final Hearing, to: (a) counsel to Regions; (b) the Debtor's

20 largest unsecured creditors as set forth in the list filed by the Debtor in the Chapter 11 Case

pursuant to Bankruptcy Rule 1007(d); (c) all known holders of liens on, or equipment leasing

interests in, the Debtor's assets; (d) all applicable government agencies to the extent required by

the Bankruptcy Rules or local rules of this Court; (e) all parties that have filed an appearance in

the Chapter 11 Case; and the U.S. Trustee (collectively, the "Notice Parties").

32.     Final Hearing; Objections.  A final hearing to consider the Motion will be held on

March 10, 2017 at 2:00p.m. before the Honorable David Jones Bankruptcy Judge, Courtroom

400, 515 Rusk Street, Houston, Texas 77002.  Any party desiring to object to the relief sought in

the Motion on a final basis shall file a written objection with the Court on or before March 8,

2017, and shall contemporaneously serve that objection on the Notice Parties so as to be received

by such parties on or before such date.

**Signed: March 01, 2017.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

1/3/2017 5:03:04 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 14541506
By: BOVELL, JOSHUA J
Filed: 1/3/2017 5:03:04 PM
Pgs-4

6

CAUSE NO, 2015-49205

| | | |
|---|---|---|
| REGIONS BANK | § | IN DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| HUMBLE SURGICAL HOSPITAL, LLC; | § | |
| HUMBLE SURGICAL HOLDINGS, | § | |
| LLC; K&S CONSULTING | § | |
| MANAGEMENT, LLC; FM 1960 | § | |
| PROPERTIES, LLC; and K&S | § | |
| CONSULTING ASC, LP | § | |
| | § | |
| Defendants. | § | 215th JUDICIAL DISTRICT |

### AGREED FINAL JUDGMENT

Plaintiff Regions Bank ("Plaintiff") and Defendants Humble Surgical Hospital, LLC; Humble Surgical Holdings, LLC; K&S Consulting Management, LLC; and K&S Consulting ASC, LP; FM 1960 Properties, LLC (the "Humble Defendants"); agree to this final judgment and move for its entry. Having considered their motion, the Court finds and holds that it should be granted. It is therefore

ORDERED, ADJUDGED, and DECREED that the Agreed Motion for Entry of Final Judgment against Humble Surgical Hospital, LLC; Humble Surgical Holdings, LLC; K&S Consulting Management, LLC; FM 1960 Properties, LLC; and K&S Consulting ASC, LP is GRANTED in its entirety; it is further

ORDERED that Regions Bank have and recover from the Humble Defendants, jointly and severally, the following amounts: outstanding principal on the Revolving Note in the amount of $1,900,000.00; earned accrued interest on the Revolving Note in the amount of $51,470.19 as

3

of March 31, 2016 late fees on the Revolving Note in the amount of $3,060.28 as of March 31, 2016; with interest continuing to accrue on the Revolving Note after March 31, 2016 at the rate of $155.06 per diem until date of Judgment; it is further

ORDERED that Regions Bank have and recover from the Humble Defendants, jointly and severally, the following amounts: outstanding principal on the Term Note in the amount of $1,458,773.86; earned accrued interest on the Term Note in the amount of $53,901.15 as of March 31, 2016; late fees on the Term Note in the amount of $90,346.33 as of March 31, 2016; with interest continuing to accrue on the Term Note after March 31, 2016 at the rate of $159.57 per diem until date of Judgment; it is further

ORDERED that Regions Bank have and recover from the Humble Defendants, jointly and severally, the sum of $314,475.94, for Regions Bank's reasonable attorneys' fees through the date of judgment; and as contingent awards: in the event of unsuccessful filing by the Humble Defendants of a motion for new trial or other motion to modify, correct, reform, or set aside judgment, the further sum of $10,000.00; in the event of successful appeal by Regions Bank or in the event of unsuccessful appeal by the Humble Defendants, the further sum of $15,000.00; in the event of filing a petition for review to the Supreme Court of Texas, the further sum of $5,000.00; and the further sum of $10,000.00 in the event a petition for review to the Supreme Court of Texas is granted; it is further

ORDERED that the judgment rendered shall bear interest at the rate of five percent (5%) per annum from the date of this Agreed Judgment until paid; it is further

ORDERED that Regions Bank have and recover from the Humble Defendants, jointly and severally, its court costs related to the Term Note and Revolving Note;.

4

Any provision of this Agreed Judgment to the contrary notwithstanding, FM 1960 Properties, LLC shall not be obligated under this Agreed Judgment for any amounts in excess of those due under that one certain Limited Corporate Guaranty dated July 10, 2013.

All costs of court expended or incurred in this cause are adjudged against the Humble Defendants.

All writs and processes for the enforcement and collection of this Agreed Judgment as to the Term Note and Revolving Note or the costs of court may issue as necessary.

This final judgment disposes of all parties and claims, and is final and appealable.

SIGNED at Houston, Texas on this the _____ day of _____, 2016.

Signed:
1/4/2017

_____
JUDGE PRESIDING

AGREED AS TO FORM AND SUBSTANCE and
ENTRY REQUESTED:

McGLINCHEY STAFFORD, PLLC

By: /s/ Matt D. Manning
    KYLE A. FERACHI
    State Bar No. 24072024
    MATT D. MANNING
    State Bar No. 24070210
    1001 McKinney, Suite 1500
    Houston, TX 77002
    Telephone:    (713) 520-1900
    Facsimile:    (713) 520-1025

ATTORNEYS FOR PLAINTIFF REGIONS BANK

By: _____
    JAMMY M. KIGGUNDU
    State Bar No. 24050874
    1811 Bering Dr., Suite 420

5

Houston, Texas 77057
Telephone (713) 609-7704
Fax: (713) 227-7497

ATTORNEY FOR DEFENDANTS
HUMBLE SURGICAL HOSPITAL, LLC;
HUMBLE SURGICAL HOLDINGS, LLC;
K&S CONSULTING MANAGEMENT, LLC;
FM 1960 PROPERTIES, LLC; AND
K&S CONSULTING ASC, LP

HUMBLE SURGICAL HOSPITAL, LLC

By: _____
Name: MUSTAPHA KIBINGE
Title: PRESIDENT

HUMBLE SURGICAL HOLDINGS, LLC

By: K&S CONSULTING ASC, LP
    Its Sole Member

    By: K&S CONSULTING MANAGEMENT, LLC,
        its Sole General Partner

        By: _____
        Name: MUSTAPHA KIBINGE
        Title: AUTHORIZED OFFICER

K&S CONSULTING MANAGEMENT, LLC

By: _____
Name: MUSTAPHA KIBINGE
Title: AUTHORIZED OFFICER

FM 1960 PROPERTIES, LLC

By: _____
Name: MUSTAPHA KIBINGE
Title: AUTHORIZED OFFICER

K&S CONSULTING ASC, LP

By: K&S CONSULTING MANAGEMENT, LLC,
    its Sole General Partner

    By: _____
    Name: MUSTAPHA KIBINGE
    Title: AUTHORIZED OFFICER

6

**Humble Surgical Hospital, LLC**
**14-Day Cash Collateral Forecast**

| | Day 1 27-Feb | Day 2 28-Feb | Day 3 1-Mar | Day 4 2-Mar | Day 5 3-Mar | Day 6 4-Mar | Day 7 5-Mar | Day 8 6-Mar | Day 9 7-Mar | Day 10 8-Mar | Day 11 9-Mar | Day 12 10-Mar | Day 13 11-Mar | Day 14 12-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | $ 259,780 | $ 279,360 | $ 329,608 | $ 148,971 | $ 203,533 | $ 159,989 | $ 159,989 | $ 159,989 | $ 211,165 | $ 265,538 | $ 318,953 | $ 373,061 | $ 330,160 | $ 330,160 |
| | | | | | | | | | | | | | | |
| Net Operating Cash Receipts | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Operating Cash Receipts | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | - | - | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | - | - |
| **Total Net Operating Cash Receipts** | $ 60,000 | $ 60,000 | $ 60,000 | $ 60,000 | $ 60,000 | $ - | $ - | $ 60,000 | $ 60,000 | $ 60,000 | $ 60,000 | $ 60,000 | $ - | $ - |
| | | | | | | | | | | | | | | |
| Cash Outflows | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Post-Petition Net Payroll (1) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 67,420 | $ - | $ - |
| Post-Petition Payroll Taxes (1) | - | - | - | - | - | - | - | - | - | - | - | 23,511 | - | - |
| Pre-Petition Uncleared Net Payroll (1) | - | - | - | - | 20,957 | - | - | - | - | - | - | - | - | - |
| Pre-Petition Gross Accrued Wages (1) | - | - | - | - | 36,886 | - | - | - | - | - | - | - | - | - |
| Pre-Petition Gross Accrued PTO (2) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Pre-Petition United Healthcare Insurance | 34,852 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Rent | - | - | 233,945 | - | - | - | - | - | - | - | - | - | - | - |
| ER Physicians | - | - | - | - | 40,262 | - | - | - | - | - | - | - | - | - |
| Management Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Medical Supplies | 4,030 | 4,030 | 5,176 | 4,030 | 4,030 | - | - | 4,030 | 4,030 | 5,176 | 4,030 | 4,030 | - | - |
| Outside Services | 571 | 4,884 | 571 | 571 | 571 | - | - | 571 | 571 | 571 | 571 | 571 | - | - |
| Equipment lease | 434 | 434 | 434 | 434 | 434 | - | - | 3,818 | 623 | 434 | 434 | 699 | - | - |
| Utility | 129 | - | 107 | - | - | - | - | - | - | - | 453 | 3,372 | - | - |
| Payroll Services | - | - | - | - | - | - | - | - | - | - | - | 1,742 | - | - |
| Repairs and Maintenance | 228 | 228 | 228 | 228 | 228 | - | - | 228 | 228 | 228 | 228 | 228 | - | - |
| Wage Garnishments | - | - | - | - | - | - | - | - | - | - | - | 1,152 | - | - |
| Miscellaneous | 87 | 87 | 87 | 87 | 87 | - | - | 87 | 87 | 87 | 87 | 87 | - | - |
| Office Supplies | 67 | 67 | 67 | 67 | 67 | - | - | 67 | 67 | 67 | 67 | 67 | - | - |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Vehicle Expenses | 11 | 11 | 11 | 11 | 11 | - | - | 11 | 11 | 11 | 11 | 11 | - | - |
| Credentialing | 10 | 10 | 10 | 10 | 10 | - | - | 10 | 10 | 10 | 10 | 10 | - | - |
| **Total Cash Outflows** | $ 40,420 | $ 9,752 | $ 240,637 | $ 5,439 | $ 103,544 | $ - | $ - | $ 8,823 | $ 5,628 | $ 6,585 | $ 5,892 | $ 102,901 | $ - | $ - |
| **Net Operating Cash Flow** | $ 19,580 | $ 50,248 | $ (180,637) | $ 54,561 | $ (43,544) | $ - | $ - | $ 51,177 | $ 54,372 | $ 53,415 | $ 54,108 | $ (42,901) | $ - | $ - |
| **Ending Cash Balance** | $ 279,360 | $ 329,608 | $ 148,971 | $ 203,533 | $ 159,989 | $ 159,989 | $ 159,989 | $ 211,165 | $ 265,538 | $ 318,953 | $ 373,061 | $ 330,160 | $ 330,160 | $ 330,160 |

(1) All payroll amounts exclude M. Kibirige and J. Williams as they are deemed to be insiders.
(2) There is a requested reserve amount of $49,969.53 consisting all unused PTO accrued in the 180 days prior to the Petition Date. The figure will be updated as more information becomes available.

Exhibit "2"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **AETNA LIFE INSURANCE CO.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.  4:12-cv-01206** |
| | § | |
| **HUMBLE SURGICAL HOSPITAL, LLC** | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| **In re: HUMBLE SURGICAL HOSPITAL,** | § | |
| **LLC, ET AL**[11] | § | Case No. 17-31078-H2-11 |
| | § | (Jointly Administered Under Case |
| | § | No. 17-31078-H2-11 |
| | § | |
| **Debtors.** | § | |

## ORDER GRANTING EMERGENCY MOTION TO WITHDRAW REFERENCE, TO LIFT AUTOMATIC STAY AS TO REGIONS BANK AND TO TERMINATE DEBTOR'S ABILITY TO USE CASH COLLATERAL

Having considered Regions Bank's Emergency Motion to Withdraw Reference, to Lift

Automatic Stay as to Regions Bank and to Terminate Debtor's Ability to Use Cash Collateral,

and finding that good cause exists, the Motion is **GRANTED**.

**IT IS THEREFORE, ORDERED**, that the reference of Case No. 17-31078-H2-11 to

the United States Bankruptcy Court for the Southern District of Texas, is hereby

---

[11] Humble Surgical Hospital, LLC and three affiliates filed bankruptcy. The Debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Humble Surgical Hospital, LLC (4960), Case No. 17-31078-H2-11; Humble Surgical Holdings, LLC, Case No. 17-31079-H2-11; K&S Consulting Management, LLC, Case No. 17-31081-H-2-11 and K&S Consulting, ASC LP, Case No. 17-31080-H2-11. These Debtors are collectively referred to herein as "Humble" or "Debtors."

1

**WITHDRAWN**, and all proceedings in Case No. 17-31078-H2-11 and the cases jointly administered with it shall be before this Court;

 **IT IS FURTHER ORDERED**, that the automatic bankruptcy stay in all of the cases jointly administered with Case No. 17-31078-H2-11 be and is hereby terminated as to Regions Bank, and the fourteen day stay under Federal Rule of Bankruptcy Procedure 4001(a)(3) is waived as to Regions Bank;

 **IT IS FURTHER ORDERED**, that Humble Surgical Hospital, LLC's authority to use cash collateral under the Cash Collateral Order (Doc. No. 54; Case No. 17-31078-H2-11) is hereby terminated.

 SIGNED this _____ day of _____, 2017

_____

UNITED STATES DISTRICT JUDGE