# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| AETNA LIFE INSURANCE CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action: 4:12-cv-01206 |
| vs. ) | |
| ) | Judge Lynn N. Hughes |
| HUMBLE SURGICAL HOSPITAL, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| *In re:* ) | |
| ) | |
| HUMBLE SURGICAL HOSPITAL, LLC, ) | Case No. 17-31078-DRJ |
| *et al.*, ) | (Chapter 11) |
| ) | |
| DEBTORS ) | Jointly Administered |
| ) | |

## PATIENT CARE OMBUDSMAN'S FIRST INTERIM REPORT

Pursuant to 11 U.S.C. §333 of the Bankruptcy Code and the March 28, 2017 Order of this Court directing the United States Trustee to Appoint a Patient Care Ombudsman [Docket No. 431 in 4:12-cv-0126; Docket No. 119 in 17-31078-DRJ], the United States Trustee provided notice of appointment of Susan N. Goodman, RN JD as the Patient Care Ombudsman ("**PCO**") [Docket No. 432 in 4:12-cv-0126; Docket No. 120 in 17-31078-DRJ] and directed her to submit regular reports of her evaluation regarding the quality of patient care provided at Humble Surgical Hospital, LLC ("**Debtor**").

PCO is a Registered Nurse and an attorney with work experience in clinical/operational health care and health regulatory compliance law. In compliance with the federal privacy requirements, the PCO cannot disclose any individually identifiable health information that could distinguish a patient directly or could provide a reasonable basis to do so. *See* 45 CFR §160.103. Accordingly, specific site visit and patient interview dates are not provided although PCO's

observations, audits, and interviews occurred between the date of appointment and the filing of this report.

Further, although PCO reviews Debtor's care processes relative to federal and state licensing and quality regulations, PCO does not assume liability for Debtor's compliance obligations under state and federal law and any and all proposed or implementing regulations. Moreover, while PCO may use the auditing tools and guidelines employed by certification agencies and auditors; PCO does not certify the Debtor's compliance with any regulatory standards.

PCO comes now and submits this *Patient Care Ombudsman's First Interim Report* ("**First Report**") detailing site visit review, observations, and analyses of Debtor's operations. PCO did confirm that site leadership posted a notice to patients, in lieu of direct service of *Notice Pursuant to Fed. R. Bankr. P. 2015.1 of Patient Care Ombudsman's First Interim Report* filed at Docket Nos. 501 in the District Court Case and 159 in the Bankruptcy Case.

## EXECUTIVE SUMMARY

Although PCO did not observe patient care decline as contemplated by 11 U.S.C. 333(b), Debtor's operations are significantly strained by the financial challenges and the physician departures surrounding the District Court litigation and the bankruptcy process. Most notable was supplies either exhausted or below par level and the regular need to borrow necessary supplies and pharmaceuticals to maintain clinical operations. While staff has diligently shuffled operative schedules around supply challenges or delays, such shuffling and borrowing is not a sustainable model if Debtor is unable to affect a rapid sale in the reorganization process. While a modest daily supply budget was recently implemented, a chunk of these monies will need to go to repay those previously borrowed supplies and medications.

Importantly, underneath the litigation and the reorganization remains an exceedingly dedicated skeleton staff, many with a great deal of tenure with Debtor, led by interim clinical leadership who worked to re-established compliance with Medicare licensure conditions of participation.

## DEPARTMENTAL REVIEWS

**Facility Overview.** The one-story hospital is contiguous with a three-story medical office building ("MOB"). The bulk of the clinical space is dedicated to six operating rooms ("ORs") and a two-room procedure area with its own five-bay pre and post area. The hospital only has five inpatient beds and one emergency department ("ED") room.

**Clinical Operations.** On the date of PCO's site visit, two operative procedures were completed, with one patient anticipated staying in the inpatient area for extended recovery. Given the timing and nature of the procedures, PCO observed care and did not engage in pre or post-operative patient interviews.

Clinical staff is cross-trained to cover the pre-operative, operative, post care, and ED roles, as appropriate within scope of practice requirements. PCO also observed radiology staff flexing to technician/transport roles. PCO did interacted with clinical staff, including a surgeon, the anesthesia team (physician and nurse anesthetists), and the ED physician. All were positive about the level of patient care despite the significant financial strain impacting supply flow. The ED was minimally staffed, given that ED patient volume is nearly non-existent.

**Radiology.** The department has 4 c-arms, 1 mini c-arm, and a portable x-ray machine. Equipment that is in use, shows recent biomedical ("biomed") preventative maintenance ("PMa") review. Annual physicist oversight and staff licensures were confirmed. While PM and x-ray badge lapses/delays for non-payment were reported, physicist coverage was uninterrupted. Equipment that was previously stored in the MOB needing PMs were appropriately marked as "out-of-use" and segregated from operational equipment. While no CT scan was on site, a leaded room that could accommodate this equipment, by the procedure area, was noted.

**Cath Lab.** The cath lab is functional but without current patient volume. It resides in the OR area in one of the six OR rooms. Minimal consignment remains in place. Daily equipment checks and regular cleaning were confirmed by log review.

**Sterile Processing Department ("SPD").** SPD was toured and logs confirming appropriate equipment functionality and sterility were reviewed. One staff member covers this

area. All sterilizers and Sterrad® machines were operational. Adequate supplies were confirmed.

**Clinical Laboratory.** The lab shifted from high to moderate complexity when the pathologist left surrounding non-payment issues. The lab can run complete blood count, cardiac enzyme, electrolyte, and basic urinary analysis testing under its current CLIA certification and leadership level, which PCO reviewed. The department is minimally staffed with an MT level Director and an MLT level member also serving as the phlebotomist. When high complexity type and cross match lab services and blood availability are needed, those services are contracted out, as is microbiology. Staff reported receiving billing complaint calls, unrelated to operational hospital lab functions, which were referred to the management company.

**Patient Records.** Patient records are predominately paper. Records from 2010 through 2015 are stored off-site. In 2015, for some period, Debtor used an electronic health record ("EHR") called Cyramed. This limited EHR was a hybrid paper/EHR model. Debtor has re-established its ability to access and print records from this system as part of its recent interactions with The Joint Commission ("TJC"). Of note, one staff member is covering business office, charge capture, and health information management ("HIM" a/k/a "Medical Records"). All charge capture is sent to a management company for claim billing.

**Medical Staff Office/Credentialing.** A PRN staff member assists with physician credentialing given the active staff is around 60 physicians. The hospital has a medical director as required.

**Information Technology ("IT").** The hospital does not have on-site IT. A server room was noted and unlocked, although that was attributed to a recent weekend service call for a phone system outage unrelated to payment issues. PCO cannot confirm the status of IT risk assessments and security officer roles, and suspects lapses if payment issues were present.

**Dietary and Environmental Services ("EVS").** The hospital has a small kitchen area which is staffed by one team member who prepares any patient meals, as needed, manages clinical area floor stock, and services visitors and staff. PCO reviewed logs and processes and

toured the dietary area.  A contracted dietician was reported as being in place and available as needed.  No concerns noted.

EVS coverage is accomplished by a limited team.  PCO interviewed one of two EVS staff members during the site visit and reviewed the service cart.  No significant supply issues noted.  PCO did note an empty waterless hand gel dispenser by an OR room that was not currently in use—consistent with the supply strain already discussed.

**Pharmacy.**  The current Pharmacy Director has been in place for two weeks, with only recently getting full access to the Omnicell electronic medication storage and dispensing system.  The pharmacist did report supply shortages related to bankruptcy, with nearly $8,000 in supplies borrowed since the bankruptcy filing.  Due to regulatory limitations on continued supply borrowing, PCO will remain engaged to monitor supply availability of common pharmaceuticals and fluids.

One pharmacy technician assists the Director.  Off hours' coverage is on an on-call basis.  Because of the recent leadership transition and the volume of paper left for the current Director to sort and organize, PCO will engage remotely regarding quality monitoring for this area, and file a supplemental report if concerns arise.

**Facilities.**  This area is covered by one team member, who also serves as a maintenance technician and security.  PMs for this area are now current, after lapsing due to budget constraints prior to the bankruptcy filing.  Fire drills are also current.  Two chiller compressions that were out-of-service have been repaired.  Extermination is current.  Quarterly air filter replacement will come due again soon.  No other upcoming PMs were reported.  PCO reviewed chillers, vacuum pumps, boilers, air handlers, air gas, main panel and transfer switches, and riser room.  No concerns noted.

**Materials Management/Supply Chain.**  One individual covers this area.  Given the non-payment challenges, she has had to secure alternative vendors in several areas post-bankruptcy.  A brief walking review of the main supply area quickly revealed low par levels of

common supplies.  Key leadership meets every morning for a brief stand-up and work closely together to manage supply needs to case schedules.

## SUMMARY AND NEXT STEPS

While the Debtor is maintaining patient care quality with a limited, dedicated team that meets the general hospital licensure requirements, low patient volumes with supply strain seem to provide a very limited window to effect reorganization.  In an effort to reduce additional administrative burden, PCO will work to establish regular remote contact with clinical leadership and will plan on filing a remote supplemental or second report, as needed, so long as current critical staff remain in place.  While all remaining team members must be commended as being critical and essential, PCO will most closely monitor staff departures in materials, laboratory, pharmacy, and/or clinical leadership.  If any occur, a second site visit may be necessary.

Dated:  May 3, 2017                                    MESCH CLARK ROTHSCHILD

By: */s/Susan N. Goodman*
    Susan N. Goodman
    Arizona State Bar No. 019483
    259 North Meyer Avenue
    Tucson, Arizona 85701
    Phone:  (800) 467-8886 ext 141
    Fax:     (520) 798-1037
    sgoodman@mcrazlaw.com
    *Patient Care Ombudsman*

## CERTIFICATE OF SERVICE

I, Susan N. Goodman, hereby certify that a copy of this document was served via regular mail on those parties where no email address was available as noted in Exhibit A, All other Parties with email addresses provided were sent an email copy of this report.

Dated:  May 3, 2017                                   MESCH CLARK ROTHSCHILD


By:   */s/Susan N. Goodman*
      Susan N. Goodman
      Arizona State Bar No. 019483
      259 North Meyer Avenue
      Tucson, Arizona 85701
      Phone:  (800) 467-8886 ext 141
      Fax:     (520) 798-1037
      sgoodman@mcrazlaw.com
      *Patient Care Ombudsman*

**EXHIBIT A**

| | |
|---|---|
| **Melissa Anne Haselden; Edward Rothberg**<br>Hoover Slovacek LLP<br>Galleria II Tower<br>5051 Westheimer, Suite 1200<br>Houston, TX 77056<br>haselden@hooverslovacek.com<br>Rothberg@hooverslovacek.com<br>*Attorneys for Debtors* | **Robert Ogle**<br>The Claro Group<br>711 Louisiana Street, Suite 2100<br>Houston, TX 77002<br>bogle@theclarogroup.com<br>*Chapter 11 Trustee* |
| **Kari Coniglio; John James Sparacino**<br>Vorys, Sater, Seymour and Pease LLP<br>700 Louisiana , Suite 4100<br>Houston, TX 77002<br>kbconiglio@vorys.com<br>jjsparacino@vorys.com<br>*Attorneys for Chapter 11 Trustee* | **Hector Duran**<br>Office of the U.S. Trustee, Region 7<br>515 Rusk, Suite 3516<br>Houston, TX 77002<br>hector.duran.jr@usdoj.gov<br>*United States Trustee Trial Attorney* |
| **Richard A. Aguilar; Rudy Cerone; Matt Manning**<br>McGlinchey Stafford PLLC<br>601 Poydras St ,12th Floor<br>New Orleans, LA 70130<br>raguilar@mcglinchey.com; rcerone@mcglinchey.com<br>mmanning@mcglinchey.com<br>*Attorneys for Regions Bank* | **Robert M Hirsh**<br>Arent Fox LLP<br>1675 Broadway<br>New York, NY 10019<br>robert.hirsh@arentfox.com<br>*Attorneys for Committee Unsecured Creditors* |
| **Tad Davidson II; John Shely**<br>**Joseph Rovira; Brian C. Pidcock**<br>Andrews Kurth Kenyon LLP<br>600 Travis, Suite 4200<br>Houston, TX 77002<br>taddavidson@andrewskurth.com<br>johnshely@andrewskurth.com<br>josephrovira@andrewskurth.com<br>brianpidcock@andrewskurth.com<br>*Attorneys for Aetna Life Ins. Co.* | **Owen Mark Sonik**<br>Perdue, Brandon, Fielder, Collins & Mott, L.L.P.<br>1235 N. Loop West, Suite 600<br>Houston, TX 77008<br>osonik@pbfcm.com<br>*Attorneys for Humble Independent School District* |
| **Courtney Hull**<br>Assistant Attorney General<br>Bankruptcy & Collections Division MC 008<br>P.O. Box 12548<br>Austin, TX 78711-2548<br>Courtney.hull@oag.texas.gov<br>*Attorneys for The Comptroller of Public Accounts of the State of Texas and The Texas Workforce Commission* | **Joshua W. Wolfshohl, Eric M. English**<br>Porter Hedges LLP<br>1000 Main Street, 36th Floor<br>Houston, TX 77002<br>jwolfshohl@porterhedges.com<br>eenglish@porterhedges.com<br>*Attorneys for Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics and Genesis-Humble Management Services, LLC* |
| **James Scott Douglass**<br>1811 Bering Dr., Suite 420<br>Houston, TX 77057<br>jsd@aol.com<br>*Attorneys for J. Scott Douglass* | **Tara Grundemeier**<br>Linebarger Goggan Blair & Sampson, LLP<br>P.O. Box 3064<br>Houston, TX 3064<br>Houston_bankruptcy@publicans.com<br>*Attorneys for Harris County* |

| | |
|---|---|
| **Steven A. Leyh**<br>Leyh Payne & Mallia, PLLC<br>9545 Katy Freeway, Suite 200<br>Houston, TX 77024<br>sleyh@lpmfirm.com<br>*Attorneys for Capital Partners Financial Group USA, Inc.* | **Matthew Scott Okin, David L. Curry, Jr.**<br>Okin Adams LLP<br>1113 Vine St., Suite 201<br>Houston, TX 77002<br>mokin@okinadams.com<br>dcurry@okinadams.com<br>*Attorneys for Pacific Genomics, LLC* |
| **David W. Ghisalbert**<br>Azem & Ghisalbert, L.L.P.<br>2000 Bering Drive, Suite 700<br>Houston, TX 77057<br>d.ghisalbert@a-glawfirm.com<br>*Attorneys for David W. Ghisalbert and Azem & Ghisalbert, L.L.P.* | **Stephen M. Pezanosky, Matthew T. Ferris**<br>Haynes and Boone, LLP<br>2323 Victory Ave, Suite 700<br>Dallas, TX 75219<br>stephen.pezanosky@haynesboone.com<br>matt.ferris@haynesboone.com<br>*Attorneys for G&E HC Reit II Surgical Hospital of Humble, LLC and GA HC Reit II Humble TX MOB, LLC* |
| **Kelli Norfleet**<br>Haynes and Boone, LLP<br>1221 McKinney Street, Suite 2100<br>Houston, TX 77010<br>Kelli.norfleet@haynesboone.com<br>*Attorneys for G&E HC Reit II Surgical Hospital of Humble, LLC and GA HC Reit II Humble TX MOB, LLC* | **J. Casey Roy**<br>Assistant Attorney General<br>Bankruptcy & Collections Division MC 008<br>P.O. Box 12548<br>Austin, TX 78711-2548<br>casey.roy@texasattorneygeneral.gov<br>*Attorney for Texas Department of State Health Services* |
| **Jared Allen Rougeau**<br>Wright Law Group, PLLC<br>12620 FM 1960 Road West<br>Suite A-4, Box 304<br>Houston, TX 77065<br>jar@wrightlawgrouptexas.com<br>*Attorneys for Ascentium Capital LLC* | **Christine R. Etheridge**<br>Bankruptcy Administration<br>1738 Bass Road<br>P.O. Box 13708<br>Macon, GA 31208-3708<br>*Attorneys for Wells Fargo Vendor Financial Services, LLC fka GE Capital c/o Ricoh USA Program, fka IKON Financial Services* |
| **Kyung Shik Lee, Micahel Fritz**<br>Diamond McCarthy LLP<br>909 Fannin, Suite 1500<br>Houston, TX 77010<br>klee@diamondmccarthy.com<br>mfritz@diamondmccarthy.com<br>*Attorneys for Susman Godfrey, L.L.P.* | **John Werner**<br>Reaud, Morgan & Quinn, L.L.P.<br>801 Laurel<br>P.O. Box 26005<br>Beaumont, TX 77720-6005<br>jwerner@rmqlawfirm.com<br>*Attorneys for Tammy Roberts* |
| **Richard E. Brown**<br>14090 Southwest Freeway, Suite 300<br>Sugar Land, TX 77478<br>Brownreb34@aol.com<br>*Attorneys for MIS Financial Group, L.L.C.* | **Robert M. Hirsh, George P. Angelich**<br>Arent Fox LLP<br>1675 Broadway<br>New York, NY 10019<br>robert.hirsh@arentfox.com<br>George.angelich@arentfox.com<br>*Attorneys for Humble Surgical Hospital LLC et al.* |
| **Walter J. Cicack**<br>Hawash Meade Gaston Neese & Cicack LLP<br>2118 Smith<br>Houston, TX 77002<br>wcicack@hmgnc.com<br>Attorneys for Robert Allen Moore; Omar Fustok; Navin Subramanian; Yusuf Mosuro; Mainstay Specialty Care, P.A.; Humble Spine Surgery, PLLC; Metro Spine, PLLC; and Rover Oaks ENT Surgery, PLLC | **Darin Lee Brooks; John G. George;**<br>**Brian Waters; Jason Brown**<br>Gray Reed & McGraw LLP<br>1300 Post Oak Blvd., Suite 2000<br>Houston, TX 77056<br>dbrooks@grayreed.com; jgeorge@grayreed.com<br>bwaters@grayreed.com; jbrown@grayreed.com<br>*Attorneys for Celtic Leasing Corp.* |

| | |
|---|---|
| **Michael J. Smith** <br> Chernosky, Smith, Ressling & Smith, PLLC <br> 4646 Wild Indigo, Suite 110 <br> Houston, TX 77027 <br> msmith@csrslaw.com <br> *Attorneys for IBI Liquidating Corporation* | |

2488076.docx